## ST. LOUIS - SAN FRANCISCO RAILWAY CO. v. TYLER.

No. 14715—Opinion Filed March 18, 1924.

Rehearing Denied Nov. 25, 1924.

(Syllabus.)

1. **Master and Servant—Care in Movement of Trains—Protection of Employes.**

No duty rests upon a railway company to maintain a lookout for employes engaged in a service which requires them to be in places of danger on or near the railway tracks, or to give them warning of the movement of trains, and this is true whether the employment is such as to require the employe to be on or near the track at a particular place, known to the company, or at different places on or near the track.

2. **Same—Failure to Give Warning—Erroneous Submission of Issue.**

The submission to the jury of the question of liability of the defendant because of the failure to give warning of the approach of a train because of a custom of the defendant to give such warning signals, was error, as there was no evidence reasonably supporting that issue.

3. **Negligence — Contributory Negligence — Instructions.**

While it is well established by the decisions of this court that the trial court should not instruct the jury that if a certain state of facts is found to exist, such facts constitute contributory negligence and the plaintiff cannot recover, it is nevertheless the duty of the trial court to instruct the jury, upon request being made, what duty the law imposes upon the plaintiff as well as the defendant, and that a breach of that duty is negligence.

Error from District Court, Pawnee County; Redmond S. Cole, Judge.

Action by W. A. Tyler against the St. Louis-San Francisco Railway Company.

Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

W. F. Evans, Stuart, Sharp & Cruce, and Ben Franklin, for plaintiff in error.

Robinett & Ford, for defendant in error.

COCHRAN, J. The plaintiff was an employe of the defendant at its coal chute, and was struck and injured by one of the passenger trains of the company while engaged in this service. The coal chute is located about 200 feet south of the street crossing by the main tracks which are up grade and on a straight line from the crossing to the coal chute. The first main line track is known as the southbound track and is about six or eight feet distant from and east of the coal chute. The second track is the main line northbound track and is situated a few feet east and parallel to the first track. The coal chute is of concrete construction and is about 30 feet in diameter. Two water cranes are situated about even with the north and south ends of the coal chute and between the two main line tracks. Engineers on defendant's trains requiring coal and water stop their engine by the water crane and signal to the employes who are working in the coal chute, who go to the crane and unlock the same that water may be supplied to the engine, and assist in coaling the engine, if required. On the date of the injury, an engineer in charge of a northbound freight train stopped his engine by the south water crane and signaled his need for coal and water to the employes in the coal chute. In response to the signal, the plaintiff passed out of the coal chute, in an easterly direction to a point about 3 or 4 feet distant from the west rail of the southbound track, and then traveled south and parallel to the west rail for a distance of about 15 or 20 steps to a point opposite the south water crane located between the two main line tracks. As the plaintiff was in the act of turning and moving east across the southbound tracks to the water crane, a southbound passenger train collided with the plaintiff and inflicted severe personal injuries. The train started on its southbound trip from the street crossing just north of the coal chute, where the engine of the train had been changed, and had traveled about 200 feet and was running 15 or 20 miles per hour at the time of the accident. The train was about 30 feet north of the plaintiff when the latter turned east to pass over the southbound track to the water crane. It was the duty of the plaintiff and the other employes of the company to pass continually over and about the tracks in the

vicinity of the water crane to supply the engines with coal and water. From ten to twenty-five engines were served each day. The petition filed by the plaintiff alleged two grounds upon which he sought to recover from the defendant for the injuries which he sustained: (1) That the defendant owed the plaintiff the duty to exercise ordinary care in keeping a lookout to discover the presence of its employes at or about where the injury occurred, and to exercise ordinary care in giving signals of the approach of its trains to such employes, and that the defendant negligently failed to discharge such duty; (2) that a custom and habit prevailed on the part of the defendant to give warning signals as engines approached the coal chute in question, and that the plaintiff had a right to rely upon a signal being given by the engine as the train approached the coal chute at the time of the injury; that the defendant negligently failed to give such warning signal. The case was tried to the jury on these two questions and was submitted to the jury on instructions which, the trial court considered, covered the law applicable to the two questions presented. It is conceded in the briefs of both parties that the doctrine of "last clear chance" was not involved in the case, and with this we agree.

On the first question the court instructed the jury as follows:

"You are instructed that if you find from the evidence in this case that at the time the plaintiff was injured and at the place where he was injured, the defendant might reasonably expect or anticipate that the plaintiff or other of its employes would be on or near its tracks in the performance of their duties, then it was the defendant's duty: (1) To exercise ordinary care in keeping a lookout to discover the presence of its employes at such point; and (2) to exercise ordinary care in giving signals and warnings of the approach of its train to such employes.

"And in this connection you are further instructed that if you find in this case that the defendant owed the above duties to the plaintiff, or either of them, and failed to discharge said duties, or either of them, then the defendant was guilty of negligence toward the plaintiff."

The defendant excepted to the giving of this instruction, and insists that the giving of the same was prejudicial error. The plaintiff concedes that, as a general rule, a railway company owes no duty to its employes working on and about the tracks to maintain a lookout or to warn such employes of any ordinary incident to the service, but the plaintiff insists that the instant case presents an exception to the general rule. He states the exception as follows:

"At times and places where the presence of an employe of the company might reasonably be expected to be on the tracks of the railroad, it is the duty of the operator of a locomotive to keep a lookout for the presence of such employe and give notice of the approach of the train."

It is contended that, because of the knowledge of the defendant and its engineers that the plaintiff and other employes of the company in the discharge of their duties were called upon to be on or about the track at the particular point between the coal chute and the water crane, it was the duty of the defendant to maintain an adequate lookout and to give warning to the plaintiff and the other employes of the approach of the train. Numerous authorities are cited by the plaintiff in this connection. We shall not undertake an examination or discussion of these authorities, as the question here involved has been so definitely determined by this court that it is unnecessary to look to the decisions of other states to ascertain the duty imposed upon the respective parties to this suit. Counsel for the plaintiff contend that none of these cases by this court have application to the instant case, because in each of those cases the duties of the employe were such that they might be at various places along the right of way or track of the railway, but, in the instant case, the duties of the plaintiff were such that the defendant knew that he was expected to be on or near the railway track at the particular place where the injury occurred. We are unable to agree with this contention of the plaintiff. The underlying principles in each instance are the same. The rule adopted in this state rests upon the principles that the very object of the employment is the performance of a service which places the employe in a place of danger, and the ordinary danger attendant on the employment is a risk incident to the business as carefully conducted, and a peril of the employment. This applies with equal force, whether the duty of the employe is such that his services are performed at a particular place on the right of way, which is known to the engineers operating the trains, or whether the employment is such that it requires the employe to perform services which place him in a dangerous position at points on the track or about the track which are not known to the engineer. If the exception contended for by the plaintiff should be allowed, the rule announced in the numerous cases by this court would necessarily

fail, as the principles upon which the rule is founded are the same.    In C., R. I. & P. v. McIntire, 29 Okla. 797, 119 Pac. 1008, this court held that there was no duty on the part of a railroad company to maintain a lookout or to give warning signals to employes of the company about railroad yards, and in that case the court quoted with approval from various textwriters on the subject, and we find the rule announced is based on the following statement contained in 1 White's Personal Injuries on Railroads to Employes, sec. 328, p. 434, as follows:

"Where the public are expected to be using the track or right of way, due care requires notice of the movement of trains, for strangers may be present who do not know of the perils of the situation; with the company's employes, however, there is held to be no duty to give warning of the movement of trains, as this is the very object of the employment in which the employe is engaged, and a risk incident to the service, which he is held to assume, under his contract of employment. Employes about railroad yards are not like strangers or third parties; they know the manner of doing the business, and that cars frequently pass, without notice of their approach; and the danger of being struck by a backing engine or car is a risk incident to the business, as carefully conducted, and a peril of the employment."

It is apparent that this rule applies with the same force, whether the duty of the employe requires him to be engaged in work about the track at different places or requires him to be engaged in the same character of service at or near a particular spot. In each instance the very nature of his employment requires him to be in a place of danger, and the risk attending this employment is one of the risks incident to the business, and there is no duty on the part of the company to maintain a lookout or sound signals of warning to notify such employe of the approach of trains. This rule has been followed in Buss v. C., R. I. & P. Ry. Co., 77 Okla. 80, 186 Pac. 729; M., K. & T. Ry. Co. v. Galbreath, 49 Okla. 681, 154 Pac. 539; Hines v. Pershin, 89 Okla. 297, 215 Pac. 599. In the first mentioned case the plaintiff was employed as a yard janitor of the defendant and his services required him to be in a place of danger, and also his duties required him to be at or near a particular place in the yards. The court, after reviewing the authorities and again quoting with approval from White's Personal Injuries on Railroads to Employes, Bailey on Personal Injuries, and Elliot on Railroads, said:

"From the foregoing we are of the opinion that no duty rests upon a railway company to place an employe on the lookout to warn other employes in the yards of said railway company of approaching danger, and that such company owes no duty to give warning to such employes as to the movements of its engines and trains in said yards."

And in the syllabus of that case, it was **held:**

"Where a person employed as yard janitor in railway yards is struck by a switch engine, held, that failure of the railway company to place an employe on the lookout to warn such yard janitor of approaching danger, and the failure of said railway company to give warning to said yard janitor as to the movement of its engines or trains in said yards, does not constitute primary negligence on the part of the said railway company."

In the instant case, the court charged the jury that it was the duty of the railroad company to maintain a lookout and also to exercise ordinary care in giving signals and warnings of the approach of its train to the plaintiff. The giving of this instruction was error, as no such duty rested on the company.

The court also submitted the case to the jury on plaintiff's second theory, towit: That it was the habit and custom of the defendant, and therefore its duty, to give signals and warning of locomotives and trains approaching the coal chute and water crane. The defendant contends that there was no evidence upon which to submit this question to the jury, and with this contention we agree. The evidence on the part of the plaintiff was that it was the custom of those in charge of defendant's trains to ring the bell and to sound a whistle as through trains approached the coal chute, and whistles were also sounded at the coal chute when trains desired to be served with coal or water. That through trains coming from the south would whistle between the yard office and the coal chute and trains coming from the north would whistle between the station and the coal chute, but there was no proof of a custom of sounding warning whistles as a warning to employes at the coal chute; and the testimony further shows that the train which injured the plaintiff was not a through train, but was a passenger train operating between Tulsa and Muskogee. Whistles were habitually sounded on each side of the coal chute, but none of the evidence shows that these signals were for the purpose of giving warning to the employes at the coal chute, or that the signals were given to indicate an approach to the coal chute. It is our opinion that the evidence was insufficient to establish a custom of giving warning signals, and that the

question should not have been submitted to the jury. Defendant requested the court to give the following instruction, which was refused:

"You are instructed, therefore, that it is the duty of a person about to cross a railroad track to make a vigilant use of his senses to ascertain if there is a train approaching, and it was the duty of the plaintiff, W. A. Tyler, on approaching the track of the defendant, to look and listen for approaching trains before attempting to cross said track, and it was his duty to keep his faculties in active exercise and not to permit his attention to be diverted from the danger before him."

The plaintiff does not contend that the above instruction does not correctly state the law, but insists that it was properly refused, because the proposition of law contained in the requested instruction was fully covered by the court's general charge, and also because the giving of this instruction would invade the province of the jury in passing on the question of contributory negligence. The general instruction given by the court does not state the duty which the law imposes on a person about to cross a railroad track, and in Hines v. Dean, 96 Okla. 107, 220 Pac. 860, in passing on the question as to whether such an instruction invaded the province of the jury, the court said:

"Under the above case and a long line of other decisions this court has committed itself to the view that the trial court should not instruct the jury, that if a certain state of facts are found to exist, such facts constitute contributory negligence and the plaintiff cannot recover; but none of these cases hold that it is not the duty of the trial court, upon proper request being made, to instruct the jury what duty the law imposes upon the plaintiff, as well as the defendant, and that a breach of that duty is negligence. In no other manner can the jury be advised as to the relative duties of the parties. The requested instructions correctly stated the duty resting on a traveler upon a public highway before entering upon a railroad crossing. * * * Such being the duty of the plaintiff, it was the duty of the trial court to instruct the jury as to that duty, proper request having been made."

If the plaintiff had been entitled to have the case submitted to the jury on any theory, the defendant was entitled to have the requested instruction given, and a refusal to give the same would have constituted error. For the reasons stated, the judgment of the trial court is reversed, and the cause remanded, with directions to take such further proceedings as are consistent with the views herein expressed.

JOHNSON, C. J., and NICHOLSON, MASON, and WARREN, JJ., concur.