Gene ANDREWS, a minor, by and through his father and next friend, Joel Andrews, Plaintiff in Error,

v.

Otis Thurman ADAY, Defendant in Error.

No. 39991.

Supreme Court of Oklahoma.

March 26, 1963.

Floyd L. Martin, Jr., Oklahoma City, Hardin Ballard, Purcell, for plaintiff in error.

Pierce, Mock, Duncan, Couch & Hendrickson, Donald F. Gust, Oklahoma City, for defendant in error.

JOHNSON, Justice.

The plaintiff in error, hereafter referred to as plaintiff, filed this action in the District Court of McClain County, Oklahoma, to recover for personal injuries. He is a minor, suing by his next friend, and alleges in the petition, among other grounds, the following acts of negligence of the defendant:

"* * * 2. On or about July 30, 1960, plaintiff, an infant then eight (8) years of age, was lawfully upon a County road at its intersection with State Highway No. 74 at a point approximately 2 miles north of the North city limits of the town of Washington, in McClain County, Oklahoma, and was riding a bicycle owned by him along said County road in an Easterly direction, and was leaving the intersection.

"3. At the same time and place defendant was operating a 1960 Chevrolet Sedan automobile along State Highway No. 74 in a Northerly direction and he negligently drove the automobile into and against plaintiff and the bicycle upon which he was riding, knocking plaintiff to the ground and causing him to sustain the injuries hereinafter alleged.

"4. Plaintiff alleges that the negligence above referred to of the defendant consisted of the following:

* * * * * *

"(c) Defendant was further negligent in that he failed to yield the right of way to this plaintiff who had almost crossed the intersection before the accident occurred;

"(d) Defendant was careless and negligent in that he failed to turn his automobile to the left in an effort to avoid the plaintiff and thereby avoid injuring said plaintiff; and * * *"

At the conclusion of plaintiff's evidence, the trial court sustained the demurrer of the defendant to plaintiff's evidence. This is alleged to be error. After the overruling of a motion for new trial, plaintiff appeals.

The rule governing such situations is properly set forth in paragraph one of the court syllabus in the case of Colorado Interstate Gas Co. v. Wheeler, Okl., 344 P.2d 1055, as follows:

"In actions of legal cognizance a demurrer to plaintiff's evidence or motion for directed verdict should be overruled unless there is an entire absence of proof tending to show a right to recover; and, in passing upon a demurrer to the evidence or a motion for a directed verdict, the trial court must consider true all of the evidence favorable to the party against whom the demurrer or motion is directed together with all inferences that may be reasonably drawn therefrom and disregard all conflicting evidence favorable to the demurrant or movant."

In the light of this rule, we are convinced and hold that the trial court committed error.

The deposition of the defendant had been taken, and portions thereof were introduced by the plaintiff as admissions against interest. These admissions, together with the other testimony, established a prima facie case. Concerning the negligence charged in paragraph (c) above, he testified:

"Q. And what general part of your car struck the bicycle?

"A. The right front bumper hit the back wheel of the bicycle."

The plaintiff testified that when the bicycle was struck, its position was as follows:

"Q. O.K. Where were you when the car actually, or when the contact was made between the car and your bicycle?

"A. When my front wheels was off the road.

"Q. When the front wheels were off of what road, Gene?

"A. When I nearly got off the car hit me.

"Q. Oh, you mean it was when you were nearly off the pavement when the car hit you?

"A. Uh-huh (Indicating affirmatively).

"Q. Are you talking about the paved part of the road?

"A. Yes."

This was further corroborated by the testimony of the father of the plaintiff concerning the place where the bicycle was damaged, the rear end. This evidence, in our view, would be a matter for the jury to consider in determining whether the defendant was negligent.

Concerning allegation (d) quoted in plaintiff's petition, supra, the evidence establishes that there was no other traffic on the highway at the time of the collision; that the left lane of the highway was clear. Instead of turning to the left, defendant testified speaking about the instant before the collision:

"Q. Did you turn your wheels to go over to the ditch or anything?

"A. I angled just a little bit to the right."

The father testified concerning the skid marks left by defendant's car as follows:

"A. They went angling northeast off of the road."

Here again the evidence was sufficient to go to a jury.

Complaint is made by the plaintiff that no horn was sounded. We find no evidence in the record concerning this point, but we do find in the record an admission by defendant that he saw plaintiff when a hundred and fifty feet distant. At that distance, with the entire road clear of other traffic, it was a jury question as to whether the defendant was negligent and the accident could have been avoided by sounding the horn.

While the reversal of this cause is necessitated without reference to the failure to sound horn, if it should appear on another trial that this is the fact as asserted in the brief of plaintiff, this fact should also be submitted to the jury under proper instructions.

Title 47 O.S.1951 § 121.10(b), which statute was in full force and effect at the time of this occurrence, places a bicycle on a par with a motor vehicle both as to rights and duties.

The statute regarding the duties of one approaching a through highway protected by a stop sign at the date of this collision was Section 121.6(c), Title 47 O.S.1951, which reads:

"(c) The driver of a vehicle shall stop as required by this Act at the entrance to a through highway, and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway, or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.

"The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop, which are within the intersection, or approaching so closely as to constitute an immediate hazard, but may then proceed."

The evidence of the plaintiff concerning his action is as follows:

"Q. All right, as you got down near the highway, did you see any sign up there?

"A. Yes.

"Q. What did that sign say?

"A. Stop.

"Q. What did you do?

"A. Stopped.

"Q. Then tell the Jury, if you will, what you did after you stopped there?

"A. I looked both ways.

"Q. You looked both ways? All right. What did you see?

"A. Didn't see nothing.

"Q. You didn't see anything? Then what did you do, Gene?

"A. Started going on across."

We deem this evidence sufficient to go to a jury for its determination as to whether compliance with the statute was had, and whether the defendant was negligent.

Cause reversed for new trial.